JOHN DUNBAR and JOSEPH DUNBAR, Ex'rs of OLIVER DUN-  <span>WINDSOR,<br/>*February,*<br/>1831.</span>
BAR, *vs.* JOHN S. WOOD and EPHRAIM DAVIS.

A promissory note, containing an usurious excess of interest, was executed while the
usury act of 1797 remained in force; and after the act of 1822 came into operation,
that note was given up and another taken for the amount, without any new agree-
ment respecting interest.   *Held,* That the last note was not wholly void, but sub-
ject to apportionment, on the principle of the former statute.

This was *assumpsit* on a promissory note for $12,21, exe-
cuted to the plaintiffs' testator on the 7th day of February, A.
D. 1824.   Plea, *non-assumpsit,* and issue joined thereon.

The case came up on exceptions allowed by the county
court, and stating the following matters :—

On the trial of this case, the defendants introduced testimo-
ny tending to prove the following facts, which went to the ju-
ry without objection, viz :—

That in the year 1821, the said Oliver Dunbar, the payee
of the note, was constable of the town of Hartland, and as such,
had in his hands for collection, an execution, to the amount of
about forty dollars, in favor of one Sumner, against the defend-
ant, Davis;—that Davis was pressed by the said Dunbar for
the pay on said execution ;—that Davis said he was poor, and
could not then pay it, and wished said Dunbar to delay the
collection ;—that Dunbar declined so doing, unless said Davis
could get one James Denison to assist him, Dunbar, in raising
the money for Sumner ;—that either in the month of May or
June, of the year 1821, the said Dunbar, Davis and Denison
were together, and it was agreed between them that said Dun-
bar and Denison should take upon themselves all the responsi-
bility of the execution to satisfy Sumner ;—that the enforce-
ment of the collection of said execution against said Davis should
be delayed until the first of December following, and that said
Davis should pay said Dunbar and Denison therefor the sum
of six dollars ;—that the collection of said execution was delay-
ed until said first of December, at which time nearly the amount
of the same, and officer's fees on the same, were paid by said
Davis to said Dunbar, and a joint note to Dunbar and Deni-
son, executed by Davis for the small balance of said execution,
and said sum of six dollars ;—that Denison paid his half of said
execution to said Dunbar for Sumner, the creditor, shortly after

WINESOR,
February,
1831.

Dunbar
vs.
Wood et al.

the agreement aforesaid, or about July, but witness had no knowledge of Dunbar's paying the amount of said execution, nor when he paid it to Sumner;—that said sum of six dollars was afterwards divided between Dunbar and Denison, by taking new and separate notes from Davis, half to each ;—that, by an exchange of notes along down, the said Dunbar's share in said six dollars, to wit, the one half, was incorporated into, and forms part of the consideration of the note in controversy.

The counsel for the defendants contended, that the note was void upon two considerations, and requested the court to instruct the jury (if the testimony was believed as above set forth)—

1st, That if the transaction was believed by them to have been a contrivance on the part of Dunbar to get more than six per cent. interest on a loan of money, this note was void for usury under the statute of 1822.

2dly, That if the jury believed that Dunbar did delay the collection of the execution, as testified, and did receive therefor from Davis his half of the six dollars, by its being included in this note, the consideration, so far, was founded in so illegal a transaction as to vitiate the whole consideration of the note.

The court refused to charge as requested, but did instruct the jury, that if they found the facts to be as contended by the defendants, *on the first point above made*, the note was not void under the new statute, but they would deduct the excess above legal interest under the statute of 1797.

3dly, That if they found the facts as contended by the defendants, *in the second point made as above*, it would not vitiate the whole consideration, but a deduction should be made only *pro tanto*.

To which instructions of said court in their said charge to the jury, the defendants excepted.

*E. Hutchinson for defendants.*—The note in question contains three dollars usurious interest over and above six per cent. originally reserved in a note executed in December, 1821, by one of the defendants to the plaintiffs' testator, for which note the one in suit was substituted, with the addition of the other defendant's name as surety merely, in February, 1824. The first was taken under the statute of 1797, merely making illegal the reserving or taking of more than six per cent., and imposing a penalty for a violation. The present note, under the statute of 1822, with pretty much the same restrictions as the

WINDSOR,
February,
1831.

Duubar
vs.
Wood et al.

former statute, with the additional clause making void the security in which illegal interest should thereafter be included.

On the part of the defence, it is contended, that this note is void under the statute of 1822.

Had the same statute been in force when the first note was taken, in 1821, that existed in 1824, when the last note was received, the authorities are abundant and explicit, that not only the first, but the substituted security also, would be void.—2 Saunders' Plead. & Ev. p. 497.—2 Stark. 237, *Preston* vs. *Jackson.*—Forrest. 72, *Pickering* vs. *Banks.*—1 Hen. Black. Rep. 462, *Gray* vs. *Fowler.*—3 Camp. 119, *Phillips* vs. *Cockayne.*—10 Mass. Rep. 124, *Chadbourn* vs. *Watts.*—15 Mass. Rep. 96, *Bridge et al.* vs. *Hubbard.*—Ord on Usury, p. 103.—1 Camp. Rep. 157, *Barnes et al.* vs. *Headley et al.* —3 Term Rep. 534, *Tate* vs. *Wellings.*—7 Term Rep. 184, *Maddock, qui tam.* vs. *Hammet et al.*—8 do. 390, *Cuthbert et al.* vs. *Hayley.*—Doug. Rep. 736, *Lowe et al.* vs. *Waller.* —do. 235, *Fisher* vs. *Peasley.*—3 Stark. Ev. 1524, title Usury.—Loft. 50, *Hodges* vs. *Levat,*—8 Mass. Rep. 135, *Thompson, Ex'r.* vs. *Thompson.*—3 John. Cas. 206, *Wilkie* vs. *Rosevelt.*—Swift. Dig. title Usury, p. 312, 313, 320.

The question then arises, does the circumstance of the first note, having been taken under the statute of 1797, vary the case ? Because the reservation of illegal interest in 1821 subjected a person to certain penalties and liabilities under the old statute, if, in 1824, when the old statute had been repealed, and a new one promulgated, he sees fit to repeat the illegal reservation by taking a new security, including the same usury still again, does it follow, as a matter of consequence, that in this last act, he is not amenable to the statute in force at the time, but it is to be judged by the abrogated law ? The reservation of usurious interest, on which we rely to avoid this note, took place at the time the note was given, now in suit, in the year 1824; and we cannot perceive how the circumstance of their showing that they were in the *habit* of reserving it under the old statute, can vary their liabilities for repeating the same thing under the new.

Neither would the doctrine for which we contend involve a construction giving the statute of 1822 any *ex post facto* effect. In 1822 the legislature had no authority to enact that the reservation in the note of 1821 should operate to make *that* note void ; but they had authority to enact that if that reservation,

Windsor,
February,
1831.

Dunbar
vs.
Wood et al.

or any other similar, were repeated after the passing of the new act; the note or other security in which it should be included should be void. The statute of 1822 was not passed *after,* but passed and promulgated *long before* the reservation on which we rely.

This appears to be a question *sui generis,* and must be decided not so much by authorities as by analogy or principles. I have been unable to find an instance of a similar question having ever been raised or decided.

That our present statute is not, as is contended by the opposite counsel, wholly '*prospective,*' is manifest from the whole current of authorities, which go to establish the principle, that a substituted security is void for usury, if the first was so, altho' the latter contains no reservation of any new usury, nor any new consideration whatever.

Neither would the construction we ask for " go to effect with new or double penalties." It would, to be sure, avoid the contract, but would inflict no penalty, inasmuch as no action can lie for the penalty, until after the actual reception of the money, or money's worth, upon the contract.

The authorities are, that if at the time of the execution of a note bearing legal interest, an extra premium be paid, the note is void.—8 Mass. Rep. 135, *Thompson ex'r* vs. *Thompson.*

Now suppose such note given up, and a new one substituted, which should contain no usury, and no extra premium be paid at the time of its execution : the decisions are, that the last note is valid. The original extra premium could not operate to make the last note void, any more than it would have done the first, if the premium had not been received, nor agreed to be paid, till long after the execution of the first contract, when it formed no part of the consideration of such contract.— Swift's Digest, p. 312. And *why* is it not void ? Not upon the principle that the usury in the first contract was expunged before the second was executed, for the first contained no usury in it that could be expunged ; but simply, because the last security did not *contain usury.*

In England, under statutes embracing all the provisions to be found in ours, the decisions declaring substituted securities void under the statute, seem to have proceeded wholly upon the ground that they contained usury.

The same is true in relation to the statutes and decisions

thereon, both in Connecticut and Massachusetts.—Doug. Rep. p. 236, *Fisher* vs. *Beasly*—do. p. 737, *Lowe* vs. *Waller*.—10 Mass. Rep. p. 124, *Chadborne* vs. *Watts*.—15 Mass. Rep. p. 98, *Bridge et al.* vs. *Hubbard*, and the other authorities herein before cited.

Windsor, February, 1831.

Dunbar
vs.
Wood et al.

But it is said, that the note in question, if usurious at all, falls under the old statute, as coming within the saving clause of the new act, which saves from the operation of the statute of 1822 all rights, remedies, actions and penalties accruing or accrued, under the former statute. If the note in question fall within the clause, under which part of it does it come?

It is, to be sure, a " right or remedy," but never could be said to have been "accruing," much less " accrued," under a statute which was extinct long before this note had an existence, and which has never been revived. Neither is this an action 'accruing' under the old statute : for, although had the original consideration of this note been made the subject matter of this action, instead of the note itself, *that* would have been an 'accruing' action under the old statute : yet this can never be so considered, unless, indeed, there can be, in the nature of things, an action accruing on a note three or four years before the note had its existence as a contract. It cannot fall under the head of 'penalties;' for that has reference solely to the actual reception of usury ; and the *reservation* can constitute no part of an *accruing penalty* for the taking. Nor can this come within the definition of any " right, remedy, or action accrued" under the old statute, unless there is some kind of legal logic applicable to cases of usury, which applies to no other subject whereby it can be satisfactorily demonstrated that " rights, remedies, and actions," on this subject can, and do in legal acceptation, have an *end* before they have had a *beginning*.

The object of this saving clause, above mentioned, could have been no more nor less than for the purpose of preventing any *ex post facto* effect from growing out of the new statute ; and the whole end of that proviso is answered by a construction protecting whatever securities were in existence at the time the new act came in force, from all penalties which were not in existence at the time those contracts and securities were executed.

The present statute contemplates (like the statutes in all

83

WINDSOR,
February,
1831.

Dunbar
vs.
Wood et al.

those places from which authorities are herein cited) two kinds of offences against itself, to wit: First, an illegal reservation, which is 'complete,' in other words, has 'accrued' immediately upon the completion of the contract in which it is included: Second, an illegal taking, which cannot be complete, so that the penalty can attach, let it be passed along down through ever so many substituted securities, till the unlawful interest reserved be actually received.—Swift's Dig, p. 312, 313, and 320.—Doug. Rep. p. 236–7.—8 Term Rep. p. 392.—8 Mass. Rep. p. 135, and in the other authorities before cited.

In cases of this nature, the cancelled security has to be resorted to, as constituting the consideration of the substituted one, for evidence of the usury merely; and when that fact is established by the aid of its testimony, its office is done. The statute regulates the effects of that usury, and, as we say, the one in force at the time the substituted security was completed.

In 8 Term Rep. p. 390, the general doctrine is fully recognized, that the substituted security is void, if the first contain usury which is incorporated into the latter; and yet the court in that case drew a distinction growing out of the last contract *at the time of its execution,* which induced them to pronounce a security valid which had been substituted for usurious securities, which were cancelled, and the usury incorporated into the latter. And why? Because the obligee of the bond in suit was an innocent endorsee of the first and usurious securities, *bona fide,* and for a valuable consideration, but was ignorant of the usury when he gave up the note, and took the bond running to himself: thus presenting a case where the substituted security received a distinguishing characteristic at the time of its execution, totally the reverse of what would have been imparted to it by the original reservation in the first security.— See 10 Mass. Rep. p. 121–4, *Chadborne* vs. *Watts.*

It is further urged on the part of the defence, that although the English authorities, as well as those of Massachusetts and Connecticut, which we have cited, should be thought by the court to militate against the positions assumed by us, on the construction of their statutes; yet that our statute of *1822,* is so much broader than either of the others named, as to bring the present case within the new statute by the express terms of the act.

Our present statute contains all the prohibitions of the oth-

WINDSOR,
*February,*
1831,

Dunbar
*vs.*
Wood et al.

ers, almost word for word, and contains in addition, what is not to be found in either of the others cited, the following clause, viz:—

"Nor take any bond, bill, note, or security whatsoever, for "the payment of money to be lent, or to be due, or payable "by any means whatsoever, whereupon or whereby there shall "be reserved, or taken, or *included,* above the rate of six dol- "lars in the hundred, as aforesaid," &c.

The statute of usury in Massachusetts, as well as that in Connecticut, and also our own, with the addition above cited, all appear to have been almost precise transcripts of the statute of Anne, and it is difficult accounting for the existence of such an additional clause in our act of 1822, unless it was intended by the legislature to meet cases like the present, growing out of the change from one statute to the other, which never were, nor need be, provided for in any other government, where no such state of things had ever existed, and where they had always lived under the same statute.

*Hubbard for the plaintiffs.*—1. The excess above the actual debt included in the original note was a premium, to run the risk of costs and expense.—Ord on Usury, p. 46.—8 East. 304.

2. But if included as extra interest, it does not make this note void.

The statute of October 23, 1797, did not render the security void.—Toll's Ed. of the Stat. 251.

The act of the 12th of November, 1822, came in force April 1, 1823.—See Comp. Laws, 162-3.

This act is not retrospective. It embraces those cases only where the contract, on which the *excess* was reserved, was made *after* the law went into force.—See the statute.

The act of 1797 repeals saving all "*right, action,* or *penalty,* accruing or accrued," &c.—Stat. p. 164.

Statutes are never construed to have a retrospective operation. 2 Mod. 310.—2 Levins, 227.—4 Bur. Rep. 2460.

The usury contained in the note of 1821 *remains,* and affects the substituted note precisely as it affected the first security.—Ord on Usury, 103.—*Tate* vs. *Willing,* 3 T. R. 537. 7 do. 184.

The construction contended for would render the statute *ex post facto.*—*Caldwell et al.* vs. *Ball et al.* 3 Dal. 386.

WINDSOR,
February,
1831.

Dunbar
vs.
Wood et al.

The penalty arises upon the payment of the usury.—Ord, 118.—7 T. R. 184.

A security, originally good, cannot be made void by a subsequent usurious contract.—Ord, 100, 101, 103.—5 Dane Abr. 340, sec. 11.—8 Mass. Rep. 353.—Ibid. 101.—1 Saund. 295. See this latter case and note 1. It is said the plea should have stated an usurious contract at the time the bond was made, and that it was made in pursuance of such usurious contract ; for, if it were legal at that time, no subsequent event can make it usurious.

A *bona fide* debt is not destroyed by being mingled with an usurious contract.—1 H. Black. Rep. 462, 465.

The opinion of the court was delivered by

ROYCE, J.—There is not enough stated in the case to avoid the note for extortion or oppression. Under the other point two questions are raised. 1. Whether the original transaction was a case of usury. 2. If it was, what is the effect upon this note.

The first question depends upon the intent of the parties at the time. If the excess of six dollars above the amount of the execution, when the testator and Denison assumed the payment of it, was meant only as a compensation for trouble and expense anticipated, it did not constitute usury. But if intended to cover a loan of money it was usurious. The case does not enable us to determine how this was found. And as the jury may, under the charge given, have found it a mere cover for a loan, the other question might be considered.

The first note was given during the operation of the former statute, which, as it was always construed, avoided the usurious part of the contract, and gave a penalty. The one in suit was executed under the present statute, which avoids the whole contract. And the question is, whether this note is subject to apportionment, on the principle of the old act, or is wholly void under the new. The argument of its total invalidity supposes, that in the exchange of securities there was a new loan, and a new reservation of usury. As the case, however, discloses no evidence of any actual stipulation to that effect, the ground of the argument can be established only by implication. But we are not disposed to resort to implication, when the act may have a sufficient operation without it. And this is effected

WINDSOR,
February,
1831.

Dunbar
vs.
Wood et al.

by leaving the statute to operate on the actual contract for usury. All the leading doctrines in reference to the intermingling of an usurious loan with a legal demand, the forbearance of a pre-existing debt upon a new security with an usurious reservation, and the substitution of one usurious security for another, may be sustained on this ground. In each case, the usurious contract is made void, and in the last the substitute is void, because the original was so: it is one void contract for another. The note for which the present is a substitute, was void for part, and good for the residue, And by analogy, this should be subject to no greater infirmity. It seems to be indifferent from what cause the void excess originated under the old law, so long as, by that law, it did not vitiate the remainder of the debt. Whether it arose from usury, from mistake, or partial failure of consideration, the consequence is the same under the new law, unless the latter has been violated by a new agreement. In this view of the case, it is resolved into a question of consideration, as affected by the former statute, and not of usury under the present.

It is insisted that the note is necessarily void, from the single fact that it contains an excess of interest. And the language of the statute is appealed to in support of this position. But the expressions there used have reference only to the usurious contract, against which the act is directed. They are intended as descriptive of that contract, and prohibitory of it. This fact is therefore not entitled to the operation contended for, unless the excess was included in the note as usury, or the price of forbearance.

. We regard these views of the case as consistent with the object and terms of the new statute, while they meet the general purpose of the proviso attached to it, which saves all rights accruing or accrued under the former act. They also appear to be called for by the state of things resulting from this change of statutes. Many existing securities being founded, like the note in question, on considerations which originated before the present act, are probably obnoxious to the objection now made. And the interests of creditors might be endangered to a great extent, were such securities to be avoided, and the creditors compelled to resort to evidence, and causes of action, as they existed under the former statute.

Judgment of the county court affirmed.